Gentlemen, you can stay seated for a minute. You have 20 minutes aside. You certainly do not need to use it, but would the appellant like to reserve five of those 20 minutes for rebuttal? Yes, ma'am. Okay. And the other thing is to just ask you to keep your voices up nice and loud so that the people in the back can hear. This microphone does record, but it does not amplify. All right. We may start whenever you're ready. Good afternoon, Your Honors. Christopher Keller on behalf of the appellant, Go To Logistics. Your Honors, the merits of this case were never reached. Instead, the trial court invoked the ultimate and drastic sanction of default judgment. The court found Go To Logistics produced a backdated contract during discovery, and therefore the case was over. Your Honors, our position on appeal is simple. If the trial court's forgery finding is correct, the court committed reversible errors in deploying the last resort of default judgment. I don't condemn perjury or suggest it's something petty, something that warrants a mere slap on the wrist. So we have to first consider how that finding was made, which was essentially without an evidentiary hearing, and it's clearly an evidentiary finding. I concur, Your Honor. And we cite the believed Century American case, which held and required an evidentiary hearing. Century Road Builders? Excuse me, Your Honor. Yes, Century Road Builders. Thank you. Did you know who the trial lawyer was on that case? Justice Griffith.  Very nice job, Your Honor. What should Judge Brennan have done? She should have, well, firstly, held an evidentiary hearing. I do recognize that my opponent's position is that essentially there was a hearing, but in… There was no evidence taken at that hearing. And I agree, Your Honor. Essentially, the court relied on documents, and according to opposing counsel and Ellen Insurance, that was enough, simply looking at the documents. But this is… But you did not ask for an evidentiary hearing. And I will admit that. We could have pressed that further. Was one offered? In all honesty, I don't think one was offered, but at the same time, could we have admittedly simply brought witnesses and tendered them, and the court could have said no? So I recognize there may have been some missteps, and I don't know why, frankly, why that wasn't pressed or pursued. But having said all that, the trial court could have and should have required Mr. Resnian, Mr. Netter, to come and testify. And along those lines, one of the sanctions could have been that Mr. Resnian be held in contempt and require him to come and testify before the court. With the failure to ask for an evidentiary hearing, would the court's error that you're pointing out be plain error that you did not forfeit or waive? I think it would be plain error, Your Honor. And again, I don't believe the record is entirely clear as to whether a hearing was requested. I do know, obviously, that based on the ruling from Judge Brennan, it was all based on the papers, based on affidavits, based on documents, based on contracts. So to answer your question, I would contend that it would be plain error. Why was it, if you know, treated as a discovery sanction since, in fact, it really was more in the nature of a fraud on the court, a alleged fraud on the court? Do you know? Was that discussed? No, I don't. I do believe part of the reason would be, and this is somewhat surmising, but just frankly, that's how the plaintiff, LM Insurance, framed the issue. They framed it as a discovery abuse and part of the discovery process. And frankly, I think it was to their advantage to frame it that way, to get under the rubric of Rule 219, and to argue ultimately what they did, obviously, argue for default judgment. So I don't think, I think it was more a fraud on the court, again, if this forgery finding is correct, and I'll assume I'll go in there that it is, just for this argument, that it is a fraud. It would be a fraud on the court, and I don't think it would fall under the rubric of 219. Would it fall under 137? It might. It might. I've thought about that, and I don't know why, again, why the plaintiff didn't pursue that angle. But certainly I recognize those are two separate rules. But it could. It could. As for the moving on beyond the failure to hold the hearing and relying on simply the papers for this sanction, the court did not, under the Castle v. City of Chicago, did not warn go-to logistics of the possibility of default. And it also did not apply less onerous alternatives to default. As the court knows, Rule 219 provides a panoply of remedies short of default. And here none were employed. A $500 fine. That's true, Your Honor. That's true. But unfortunately we went from a $500 fine to default judgment without anything in between. And in a criminal law example, a criminal law analogy, that's going from a speeding ticket to the death penalty. So we go from one extreme to the other. And there had to be, or must be under law, increasingly severe sanctions. And I think, frankly, if there was maybe one other sanction between at least one or two, and Go-To was still being dilatory, then I think default is on the table. Not that it's necessarily proper, but at least L.M. Insurance would have the argument, well, the court did this, it did this, it did this, and it still wasn't enough. Go-To was still being dilatory. What do you believe is the standard of appeal? Abuse of discretion. I do. And abuse of discretion, the court has laid out in multiple opinions, and I'll point to one which we cite too, the Sorosonian, pardon me for mispronouncing that. But in that case, the court said that a just order under Rule 219 is one that promotes discovery and ensures discovery and a trial on the merits. And by definition, this trial court's ruling didn't either. It neither promoted or ensured discovery or a trial on the merits. So by definition, that is not a just order, and by definition, that is an abuse of discretion. Because the court has said in COPL as well, which we also cite, that an order, a sanction that is not just is an abuse of discretion. Probably the biggest issue here is the disagreement, this November 1st, I think it was 2013 agreement. Yes, sir. And is that critical to the claim or the defense of the claim? Yes and no, and I'll explain if I may. It is important, or I should say was, to our defense. Again, if the contract was real and was legitimate, this contract would show that there was an agreement between these two entities, GOTO and GT expedited, that certain employees were going to be, or I should say certain individuals, drivers, were going to be used by GT expedited. So in that regard, is it the mainstay of our case? No, it is not. And I would point you to... So your case would still be alive if that was stricken as a lesser sanction. Exactly. From your standpoint, it would still be alive. Yes, Your Honor. And we also had two affirmative offenses in addition, we had three actually, but one concerned the contract, one involved a stopper, and one involved drivers opting out of coverage. So there were two other affirmative defenses... Which had absolutely nothing to do with the affidavit. Precisely, Your Honor. Was it your position that you had no drivers, that you had no drivers? Was that... I think it was more or a minimal amount. Okay. Not the number that... Such that you would have been covered by the premiums already paid. Exactly. By the minimal premiums already paid. Exactly. And there's also, just to go back to your question, Justice Crippen, there was also, which would have again been fleshed out further in a motion for summary judgment, which we had planned to file, at least a motion for partial summary judgment, that with the time frame which LM Insurance ultimately was able to recover on for this $3 million, covered a number, or I should say covered a substantial amount of time in which these GT expedited drivers had coverage from another, had workers' compensation coverage from something else. So it would not be... So in other words, what I'm trying to say is that the $3 million amount would have been cut by almost two-thirds. So there's actual evidence in the record that they did have coverage somewhere else. I believe so. I don't want to say for sure, but again, this was things that would have been fleshed out in summary judgment. And again, we were not allowed, not enabled to pursue those angles. And again, just as justices are acknowledging, this contract could have been taken out and the court could have said, okay, we're not going to allow anything related to this contract. It could have even gone further and said, we're going to limit Mr. Resnick's testimony regarding this. It would have been filed completely. Now, those would have been severe punishments, but at least it would have enabled this matter to proceed to advance on the merits. And that's our position. We're not asking that, again, that this perjury or alleged perjury, if it was, that it just be a sack on the wrist. That's not a big deal. We're not suggesting that at all, if indeed the court's finding on that stands. But again, there must be alternatives that are considered and applied. And if those alternative sanctions are applied and there's still dilatory responses, then default's on the table. But we've simply gone too far too quickly. And LM Insurance essentially went for the jugular instead of seeking lesser sanctions. And in doing so, they went too far. So this sanction is too onerous as a matter of law under LaCoste, OVC, Chicago, and COPL and some of the other cases. And if I may, I would take the opportunity to apologize to this court and to opposing counsel for citing the unpublished decisions. That was a mistake on my part, and I apologize for that. But stripping away those unpublished decisions, again, I would point to COPL. I would point to LaCoste. Both First District cases and both those cases demonstrate that the watchword is caution when applying these sanctions. It's not to punish. And I think Judge Brennan understandably may have been frustrated, and I'm not going to question that frustration, but it was how she went about applying this rule and going straight for the jugular as LM Insurance asked for. So that's the problem, is that this was a punishment, not a sanction. It was a punishment. And so under COPL, under LaCoste, there was no closing of cooperation as LaCoste states. And under that, we would ask that the court reverse. If there are no further questions. We still have some time for rebuttals. Thank you, Your Honors. Counsel. Good afternoon, Your Honors. John Schmadeke for the Plaintiff and Employee, LM Insurance Corporation. I would like to address a few of the issues that were just spoken to. I think the best place to start is the question of whether the document is a forgery or not. We did not hear any argument this afternoon saying that the document was legitimate. And, in fact, all evidence, barring the affidavit of the man who signed it, says that the document is a fraud. Yeah, but you got it. It's a pretty big bar. I mean, he signed it on both sides. And he says he signed it. Well, you know, you can't prove a negative. We can, Your Honor. The documentary evidence in this case is crystal clear. We have in the record his employee telling another employee to sign it. Review it one more time before you sign it. But it wasn't an evidentiary hearing. You want to – so the question of the evidentiary hearing, I think the procedural history of the motion is worth mentioning here. We filed the motion for sanctions. There was a presentment hearing. At which time the court set a briefing schedule with the intent of that schedule being wrapped around the deposition of Larry Netter, the insurance agent who supposedly provided the document to the defendant. That was built into the schedule. Then a hearing was set. It was the defendant's choice to have their president testify via another affidavit. It was the defendant's choice not to bring in anyone as a witness. They could have brought in anyone they wanted. They knew when the hearing was. They chose to do it that way. But you didn't lay a foundation for your documents. You didn't put on evidence either. And the burden's on you as the party seeking this pretty draconian sanction. You didn't put on any evidence. Your Honor, the evidence was presented as it was given to us. These were not our – I understand. They're the defendant's documents. I can't lay a foundation for them. You can lay a foundation for where you got them. You can lay a foundation – I mean, you know, just – Yes, they didn't put on evidence, but neither did you. It wasn't an evidentiary hearing. No. It just wasn't. You know that. And then, you know, presenting witnesses by deposition isn't – That's fine. I don't dispute that. But I think the key here to remember is that they decided not to do that. They didn't want to bring their president in here to testify in front of Judge Brennan because they knew it would happen. There was no alternative explanation. But there was no hearing schedule. There was no reason for them to bring someone in. There was a hearing schedule. There was an evidentiary hearing schedule? Your Honor, the hearing was – The hearing was on your motion. There was a presentment hearing first on the motion. And then it was forebriefed. And then a hearing was set. What that hearing was – That was really just oral arguments on your motion. That was not really an evidentiary hearing. I won't even say not really. That was not an evidentiary hearing. Had there been an evidentiary hearing, we would not be wondering whether or not that particular document was just simply a different document, the one that you've got proof was signed actually at a later date, I believe, in 2015 as opposed to 2013. Had there been an evidentiary hearing, everybody would be clear about that. But it seems that maybe, and I don't know how this Court is going to rule, but it seems that maybe the judge moved a little too quickly. Your Honor, I guess all I could say is the evidence, including documents produced by the defendant, emails from the defendant's employees, the defendant's insurance agent's deposition testimony, clearly document that the contract is a fraud. It was plain and straight. It was credibility findings, right? The Court made credibility findings. The Court did make credibility findings, but it was based on those no, I mean, it's not much of a credibility question when the defendant's employee is sending another email to another employee saying, please review this one more time and then sign it. It was clear as day that that was what was happening in 2015. The insurance agent testified as much. The only. How did they cross-examine? The defendant's attorney was present at the deposition of the agent. But I mean at a hearing. You're supposed to cross-examine witnesses at an evidentiary hearing. And the Court, you know, we all know the Court should judge the testimony, evaluate the credibility based on their manner and observation, their memory, and all these things, and that doesn't happen in an argument on a brief motion. I understand. I would only just add that they could have asked for it that way. They could have requested an evidentiary hearing if they didn't think the hearing was sufficient. They never asked for any of these things. They didn't have any objection to the way the documents were presented at the time. And what are some of the other things a trial judge could have done as opposed to a default judge? Well, I think the key here is the level of the fraud on the Court. This is not just producing a document that was not true. You know, in defendant's brief, they say this is not the first time that a party has committed perjury. That's true. This is not the first time a document is falsely produced in discovery. This document was woven throughout the entire case, from the motion to dismiss, to affidavits before the Court, to interrogatory answers, to document requests, to deposition testimony. This is not an isolated incident where the Court says, fix this, here's another fine, fix this, and let's go forward. This was woven throughout. It's also important to remember that, again, this was not an isolated incident. Not even the first time they committed perjury in this case. Throughout the case. But this is a 219 discovery sanction, right? Yes, Your Honor. And what you're talking about is 137 things. It's a false statement. It's a false document filed in the Court, right? Certainly, as it relates to the motion to dismiss and the affidavit filed to the Court, that could fall under Rule 137 as well. But there is also discovery sanctions as well. In what sense? They expound upon this document, explained it in depth in discovery responses, in deposition testimony. It was all aligned. But, you know, a sanction should be tailored to promote discovery, not to punish a dilatory party. That's from Locascio. How does this promote discovery? Your Honor, it promotes discovery in part as a general deterrent to litigants. You cannot go... We got 137 for a general deterrent for litigants.  Your Honor, when a party engages in deliberate, contumacious, unwarranted disregard of court's authority, there has to be something done here. This was not the first time they've lied to the Court. They lied from word go in this case. That's exactly the purpose of sanctions. And they were sanctioned before. The history of this case is originally we filed motions to compel when they would not answer on time, when their discovery answers were incomplete. It was a motion to compel. Then they started lying. Well, there was at least one motion to compel that was filed prior to the date that they were supposed to answer the discovery. Yes. That's the third one. That motion to compel was filed prior to the time at which they were supposed to respond. I'm sorry, I'm not sure I followed. Yeah. You filed four motions to compel. That's correct, Your Honor. The third one, I believe, was filed prior to the date. There's a deadline, April 7, 2017. And before that deadline, you filed another motion to compel, right? I will take your word on that, Your Honor. I don't have the document. Well, we've read everything. I'm sure you're correct, Your Honor. I'd have to look at the record, though, to understand, remember exactly what that issue was. Even the trial court, in its order, kind of acknowledges this. It talks about the other discovery sanction cases in Illinois are distinct from this case because this is the first instance the court could find, and the parties suggest no others, where the legitimacy of the document predicating the defense has been credibly called into question. This is not a matter of delayed production, unreasonable objections, accidental spoliation, or recalcitrant witness. This is a disregard of the authority of the court. But that isn't 219. 219 is delayed production, unreasonable objections, accidental spoliation. I mean, even the court's order kind of recognizes that it's – they say there are no cases like this. It falls under 219 because of the way they presented this document. They lied about it throughout their interrogatory answers. They lied about it in their document production. They lied about it in deposition testimony. That's all discovery under 219. Yeah, but it was first presented in the motion to dismiss, if you want to get technical. But again, and then the court cites Locasio, which says it should be tailored to promote discovery, not to punish a dilatory party. That's correct, Your Honor. I think you need to understand, though, what the court was looking at with this case. Everything – every document they've produced is in question now. As this motion was being briefed, it turned out, we discovered, the defendant was running a second set of books, totally fraudulent QuickBook ledgers. The court did not take that into account in ruling on its motion to – on the motion for sanctions. But that would be yet another example of them lying about everything. All the documents in this case – all the documents produced in this case are in question. That's what the court is looking at here. The court is looking at trying to have a trial when you cannot trust a single document that was produced by the defendants in this case. You certainly cannot trust the president of GoToLogistics, who has lied repeatedly under oath, in affidavits, in deposition testimony, in interrogatory answers. Throughout this case, everything was lying. And that's what the court is looking at here when it's – when it goes to have a trial. You know, this document central to their case is a lie. Their financial letters are a lie. There are plenty of other contracts here that – So discovery is about getting at the truth, and instead they're making up documents to respond to discovery rather than producing the true documents that would help the prior effect get to the truth. That's correct. And then the question is, how do we deal with it absent a default judgment? Do we start discovery again to figure out which documents are real, which documents are fake? Who do we depose to determine which documents are real, which documents are fake? We start over. That is a – But you didn't do – was there any showing that any document other than this one, which I think we understand the importance of, was fake? Yes, Your Honor. If you look at the briefing of the motion for sanctions in our reply brief, during the briefing it was discovered that the defendants were running a second set of financial ledgers. That had to do with discovery or – Yes, Your Honor. This is obviously a premium case. Premiums are in part determined by how much you pay to people. So they produced to us financial ledgers, QuickBook ledgers, documenting their payroll. Turns out they're totally fake. They admitted as much. They had produced certificates of insurance for companies that were supposedly subcontractors. During discovery, we served subpoenas on these entities, called them up. None of them had heard of GoToLogistics. It was a total fraud on the court again in discovery. Can I ask the question, how do you do it? Well, typically you have an evidentiary hearing, like a trial, and then the court makes their findings as to credibility, and then you come in on a 137 and they pay all of the fees and other sanctions. That's how it's done, not as a discovery sanction. They're dismissing the case. I understand that, Your Honor. I think the problem here is we need to start discovery over again, just to figure out what the real documents are in this case. And that is a punishment on the plaintiff. The defendant gets away with what? The document being not testified to at trial? I should hope that it doesn't take an order of the court to say that this document is not admissible at trial. So what's the problem with starting over if the judge orders them to pay you $200,000 in fees? So what's the problem with starting over? The problem is that time is the enemy of the plaintiff in this case. Witnesses move on. These are truck drivers that will need to be called to testify. People move on. People forget. Another year goes by. Once the case is filed, it takes five years until people die. And the only issue is whether they were employees or not. That's really the only factual issue, right? I mean, we know premiums were paid. They say they didn't have employees. You say, oh, yeah, you did. You had a bunch of them and you didn't pay us our premiums. The factual issues in the end are pretty straightforward. The ultimate question whether the truck drivers are employees, you're right, Your Honor, is a fairly narrow question. To that point, that's what they were paid is lots of factual issues. To that point, Your Honor, you had asked opposing counsel whether the truck drivers supposedly had coverage elsewhere. Somewhere else. I understand Mr. Kelleher was not defendant's attorney at the trial court level. And I wanted to clarify, they did not have coverage elsewhere. GT Expedited had a policy in its name. That policy did not cover any of the truck drivers that issued in this case. Premiums were a minimum amount. I don't recall the exact amount, Your Honor. It was next to nothing. The drivers' only coverage, to the extent it exists, was through the policy issued by LM Insurance. That is why this document is so important to this case. They want to say, oh, the case goes forward regardless. But that sounds like a motion for summary judgment. You're right, Your Honor. Not a discovery sanction. What's in front of us is a default for discovery sanction when there was compliance with discovery, albeit your position is it was fraudulent, but it was complied. I think the key here, and I hear what you're saying, Your Honor, and this is a point the defendants raised repeatedly, that we've answered discovery. The judge sanctioned us the first time, and we answered discovery within the deadline. That's true. They answered discovery on time after the sanctions order. They were lies. But without an evidentiary hearing, you can't prove that. This is just you coming in and saying, hey, judge, that document's no good. It's false. They made that document up, too. And so did they with this one. But if the judge held the evidentiary hearing, those issues would have been resolved. I would again just point to the fact that this was, it's not just our word that the document was false. This was emails from the defendant's employees to each other saying, sign this document. And there's an explanation for that by the president of the defendant, which you say, the judge said was not credible. I don't buy that. But there is an explanation for that in the record, correct, in his affidavit. His affidavit says, provides an explanation. But she said I don't buy that. That's not credible to me. But that's a credibility point. I think this is not a question of in Century Road, for example, where you're trying to figure out somebody's state of mind here. It is a question, it is as plain as the documents themselves. The email coming in to them with the draft agreement says, you know, it's saved as exampleoflease.doc. It comes back out a week later after they tell them to sign it as exampleoflease-1.doc. It is as plain as day what happened here. They lied throughout this case. All of their documents are in question. All of their deposition testimony is in question. This kind of behavior, you're right, Your Honor, it could absolutely have come under 137. But it also falls under 219. And this kind of behavior should not be tolerated by litigants. This is discovery abuse at its worst. They lie. They produce documents. They get caught. They take a fine. They lie some more. They get caught and say, I'm sorry, Your Honor, I didn't realize that committing perjury and falsifying documents was so bad. I apologize. It won't happen again. None of that is right here. If they had any question about the document's authenticity or any of these issues, they could have brought anybody to that hearing. They could have made it an evidentiary hearing. There was no bar on anything for the defense. It was a hearing to rule on this matter. They could have done it however they wanted. They didn't object to the way the hearing was set. They didn't object to the discovery documents being proffered to the court. They didn't object to the deposition testimony being an issue. None of those were objections made. They wanted it this way, essentially, Your Honors. They wanted to have Mr. Resentian testify via affidavit. They wanted to have him, the employees, testify via their deposition. They wanted the insurance agent to testify via deposition. That's how they wanted it. Or maybe Judge Brennan didn't want to have an evidentiary hearing. Your Honor, if I may, I believe Judge Brennan would have been very happy to have the defendant's president in the courtroom. And I'm assuming the scheduling order is in the record. I don't recall seeing it. But my guess is it's set for a hearing on the motion and not for an evidentiary hearing. I would have to look at the order. I suspect it does not, it does not, it certainly does not say evidentiary hearing. It was clearly set for hearing on the motion. I'm positive about that. Yes, I believe that is correct, Your Honor. Yes. But I don't think. This is about the basis for the ruling. And there was not an evidential hearing. There was not.   I don't think we can do any findings without an evidentiary hearing. All I would say to that, Your Honor, is that is how the defendants wanted it. They wanted to do it this way. And they, they had no objection. They, I think it was part of their litigation strategy to have the defendant testify via an affidavit. They could have had him come in. They could have asked for an evidentiary hearing. They could have done it any way they wanted to. They chose to do it this way. And I think, if I may, it's because they did not want him in front of Judge Brennan that day. Because there was no credible explanation he could give. He would have been in danger of committing further perjury had he appeared before. Which means this would have never gotten to trial. Because he never would have come in and testified at a trial. I, I can't speak to... And every time there was a discovery violation, Judge Brennan could have ordered another $100,000 in fees to be paid. I, I believe that... Rather than a default judgment. I, I guess the only point worth remembering here is this was not the first time Judge Brennan disagreed with their discovery approach. Motions to compel were granted. The motion for costs, I don't know whether that was a motion to compel as well. I forget. That showed clear perjury on the defendant's part. They lied throughout the case about whether they employed any truck drivers. I believe that was another of your questions, Your Honor. Whether they had any employee truck drivers. Or whether they were all supposedly through GT expedited. And throughout discovery, they said, no, we do not have employee truck drivers. That turned out to be yet another lie that they got caught for through our discovery work. Where it turns out that they were, they were employees. They had documents showing that. But none of those were produced unless we found them out through our own third-party discovery. That is where the first instance of sanctions happened here. That was bad enough. The judge was, I believe, very reasonable in imposing a sanction of $500 that time. But she made it clear they were not going to be getting away with this sort of thing. That sort of discovery practice was totally unacceptable. I would also add, I think it's safe to say Judge Brennan was not new to the bench. She's seen the way parties litigate before. She called this conduct astonishing. The personification of bad faith. This is not a minor discovery violation. This is not failing to answer discovery on time. It's not failing to complete depositions on time. That, of course, you can't just say you didn't appear for your deposition today. Default judgment. Nobody disabutes that. This is a year and a half of pervasive, extensive discovery abuse. Lying at every opportunity. Calling into question every document that was produced. You're going to have to finish up. Your Honor, if there are no other questions. Thank you. Thank you, Your Honor. Your Honor, in Lacoste, this Court stated that, quote, it would be a rare case in which the trial court could not formulate increasingly severe sanctions. And there's nothing to indicate that this case is rare or extreme. If the facts are, as your opposing counsel suggests they are, which is, I think, what she's saying, the judge is saying, is your client is making discovery impossible. We can't use discovery in this case. Nothing is to be trusted. The whole system of discovery is a big waste of time. What am I supposed to do other than assume that's all true because you have no defense and you lose? Well, Your Honor, there's evidence in the record that there was e-mails, as counsel continuously refers to, that supposedly demonstrate this forgery and this misconduct. It's all one party's interpretation. Obviously, they're entitled to their interpretation, but these are opaque e-mails simply saying, here's this document, here's this. There's a history, over a 10-year history, between Mr. Netter, who works for the insurance producer, and the president of GoTo, Mr. Resnick. And they had passed back over the course of a decade numerous agreements. They would meet in person. So simply to argue that this contract is a forgery because they didn't have it and they couldn't remember exactly the details of this agreement when they had various agreements, again, through the course of a decade, that's a stretch. And our position was, and still is, that Mr. Resnick did not commit forgery, did not commit forgery. And in the testimony, the evidence from Mr. Netter and Mr. Filofsky, simply there's not a smoking gun. And counsel acts as if there is some smoking gun. And if there were, it would be there. They had the e-mails. But there's nothing that definitively states or definitively demonstrates that this was a forgery. So there's certainly a lack of evidence that this document was proper or that we didn't have the proper document at this time in 2013 or 2015. But there's nothing explicitly saying that it is a forgery. So, again, as Justice Griffin pointed out, it's difficult to prove a negative. And that's in the position that we were in the trial court. And not having an evidentiary hearing obviously didn't help. It didn't help this case and didn't help Elm Insurance. So I think if they had done that and brought witnesses in, obviously that would have made their case much stronger. But we're here not on an evidentiary hearing but on an argument. And it's counsel's arguments that were made below and obviously that are made here again today. Nothing from a witness who testified in a court of law subject to cross-examination. And as for counsel's points about this second set of books additional, that's pure argument that the trial court specifically said in its opinion it would not consider, that was not raised until the reply brief. And obviously that argument was raised, was weighed below, excuse me, and should not be made here or should not be considered here. I won't take up much more of the court's time other than just to point out that, as Justice Griffin pointed out, how does this order, this default judgment, promote discovery? How does it ensure discovery in a trial on the merits? And to ask is to answer. This default judgment does not promote either discovery or a trial on the merits. It simply pulls the plug on this litigation. And there are certainly arguments to be made if this case is reversed without the contract, if the contract is deemed to be inadmissible or a forgery. There are certainly other arguments that go to logistics can make regarding the status of these employees. And to quote LM Insurance, the status of the employees is the issue. The contract is not dispositive. It is not relevant. Those are not my words. Those are LM Insurance's words. They argued that this contract was not dispositive and the issue was the status of the employees. And that issue can be resolved without this contract. So if there are no further questions, I respectfully request that the court reverse and remand for further proceedings. Thank you both. Thank you for your time. Thank you both. You will hear from us in due course.